We will hear argument next in number 2008-5055, Biltmore Forest Broadcasting v. United States. I am Donald Evans, appearing here this morning on behalf of Biltmore Forest Broadcasting. I think we find ourselves this morning in sort of a strange no man's land between the jurisdictions of two courts, both of which seem to have exclusive jurisdiction over some part of the matter that's at issue here, and both of whom say that the other court is the one that should take jurisdiction over it, with the result that neither court, and no court, is taking jurisdiction over a field of commercial activity by the FCC that involves billions of dollars in auction monies and some pretty fundamental constitutional issues as well. What I thought I would talk about this morning, with the Court's permission, is... Constitutional issues. What's the constitutional issue that you're raising? If you take the decision of the Folden panel to its ultimate conclusion, which I think will come up in the course of what I'm going to talk about, the Court of Federal Claims does not have jurisdiction to even hear a takings claim. Well, but you're not raising a takings claim as I understand it today. Well, I am raising a takings claim in two respects. Well, let me go back. The complaint does not assert a takings claim, correct? No, it does not. All right. But the reason takings is relevant to our discussion today is because the Folden Court seems to suggest that the Court of Federal Claims has no jurisdiction over anything that relates to an FCC licensing. I don't read it that way. I think what you have here is a situation if the breach of contract claim is based on a regulatory violation, you have to go first to the D.C. Circuit to find out whether there was a regulatory violation. Okay. And if there was a regulatory violation, then presumably the D.C. Circuit would remedy it, but the D.C. Circuit would not address the contract issues. Well, it may be that if you were to convince the D.C. Circuit that there was a regulatory violation, then you might be able to come back to the Court of Federal Claims for a contract remedy. Nobody is saying, as I understand it, that if there was a regulatory violation which led to a breach of contract, that the damages remedy, if there is one, doesn't come in the Court of Federal Claims. No one is suggesting that you've got a damages remedy in the D.C. Circuit. Well, maybe I'm misunderstanding what you're saying, but I think there is that suggestion because what the D.C. Circuit does when it reviews licensing decisions of the FCC and really other administrative reviews that it does of other administrative agencies is it looks at the administrative issues that are presented to it and it decides them under the usual APA criteria. And unvaryingly, if there's a contract claim or a takings claim, they say, hey, take it to the Court of Federal Claims. That's not for us to decide. You may have an issue, but we're not going to decide it. What Judge Dyke is pointing at is the administrative law notion that before you have a contract right, a property right, you first have to determine whether under administrative law you have a recoverable position. That is, you first have to determine whether you have a property interest, either contract or property under the takings clause, and that depends on whether there was an administrative determination that you had such an interest. I think what Judge Dyke is pointing to is the question of whether in view of the D.C. Circuit holding that there was no violation of the FCC's procedures, you don't have either a contract right or a property interest that could possibly be heard. You might have if they'd held there was a violation of the FCC process, but the D.C. Circuit did you in on that issue and the Supreme Court isn't interested, so there you are. Do I misread your point? No, that's correct. Of course, for a takings claim, the action has to be authorized, so you might still have a takings claim if the D.C. Circuit said that an action was authorized, but since you are only asserting a contract claim and the premise of your contract claim is that there was a regulatory violation and the D.C. Circuit has said there was no regulatory violation, Judge Plager says you're dumb, right? Well, I take issue with the premise of your statement because the D.C. Circuit only reviews regulatory violations by the FCC. I have no doubt whatsoever that had I presented my contract claim to the FCC, they would have said you may have a contract claim, but you've got to take it to the Court of Federal Claims, and in fact that's exactly what they did in the case that I brought to the Court's attention on Monday. There was a radio licensing case. Apparently there was some contract issue where the applicant was signing a contract with the FCC, and the Court said we're not going to look at that. But to get precisely to your point, Judge Dyke, I actually— But that was not part of the licensing. That was part of a testing arrangement, as I understand it, that North Point had authorized this independent tester, under the understanding and the undertaking with the FCC that that examination, the consequences of the study, would be used only with respect to North Point's licensing and not used in other ways. I mean, that's not part of the actual auction dispute. Well, it wasn't an auction dispute, but it was a contractual dispute,  But it wasn't, as Judge Bryson said. The theory wasn't that there had been a regulatory violation which led to a violation of the contract. There was a separate licensing agreement between the individual and the FCC that let the FCC use its technology. So of course that came to the Court of Federal Claims. But where you're saying there was a contract violation because there was a regulatory violation, we've said you've got to go first to the D.C. Circuit, and you're out of court unless you succeed there. Well, that's where I'm disagreeing with you respectfully, Judge Dyke. I think, conceivably, I mean, make no bones about it, what we wanted here in the first instance was the license. The license has value, you know, apart from its monetary value, and that's why we took it to the Court of Appeals and eventually to the Supreme Court. We wanted the license. We know now that we can't get the license. That's been decided against us. But we do have the comfort of the fact that we had a contract with the FCC where they obligated themselves. What was the contract with the FCC? Can we explore that for just a minute? May I just finish answering Judge Dyke's question? I'm sorry, I thought your point was complete. Go ahead. I think we could actually, if we had decided to go this route, we could have gone directly to the Court of Federal Claims once the FCC said we're not giving you the license because we had a contract right, and it would have been breached at the point where the FCC gave the license to somebody else. The Court of Appeals, the D.C. Circuit, reviewed the FCC's action for its compliance with various regulatory criteria, the ones I talked about, you know, substantial evidence in the record, compliance with the law, and so forth. And they could make that determination even if they felt that we had a contract with the FCC and even if they felt that a contract had been breached. They would say, yes, the FCC, in its wisdom, in pursuing the public interest, awarded the license to somebody else. Now, if they had a contract with you, to the contrary, you can take that case to the Court of Federal Claims and get it resolved there and you're entitled to damages. But that doesn't affect the D.C. Circuit's decision that the regulatory decision of the FCC was still proper for whatever reason. Well, for whatever reason seems to me to be a problem for you in this case because what the D.C. Circuit said, if I understand it correctly, is that your contention that one of the parties to the auction should not have been allowed to participate was exactly, and that's the predicate for your contract claim, that's exactly what the D.C. Circuit said. The FCC did not err with respect to allowing them to participate based on a late-filed family certificate. Well, what they said was that it was not unreasonable for the FCC to decide the matter the way it did. Right. And so that does not resolve the question of whether, in fact, the contract between the FCC and us was to the contrary.  Both of whom have reasonable positions about it, but that doesn't resolve what the actual... But isn't your contract, your contract is an implied contract, right? Yes. You don't have a written contract, a side deal with the FCC saying, by the way, we will kick Liberty out if they don't file on time. So it seems to me your whole contract right is tied up with the legal obligation of the FCC to kick Liberty out if they don't have a family certificate filed on time, right? Let me give you an example. Well, let me make sure I understand your position on it. Isn't that the predicate for your contract action? Yes. All right. And in which case it's pertinent, it seems to me, that the D.C. Circuit has said that predicate does not hold water. Well, no, because what the D.C. Circuit did not answer the question that would be before the Court of Federal Claims. All they said was it was not unreasonable for the FCC to do what they did. Okay? And I'm bound by that. I accept that. But that doesn't mean that, in fact, there was a contract that the FCC had with my client... An implied contract. Yes. Predicated on whether or not it was permissible for the FCC to accept Liberty's late-filed certificate. Right. But the implied contract, remember, is based on all these written public notices and regulations that are what we say apply to the auction contract. Right, which the D.C. Circuit said that they don't. Or at least you lose with respect to that issue, right? Well, no, I disagree with you because I think because of the particular regulatory avenue that the D.C. Circuit takes with respect to reviewing administrative decisions, they didn't have to reach the question and they didn't say whether they would have decided it the same way as the FCC if they had decided in the first instance or not, which is what the Court of Federal Claims would have to do. All they said is this wasn't unreasonable for the FCC to decide it that way, and that's all their job is to do. Well, that means it's not unreasonable, and hence there's no regulatory violation. And you're coming in and saying, well, we ought to disagree with the D.C. Circuit and say there was a regulatory violation. No, what I'm saying is there was. I'm saying there's no regulatory violation. That's been decided. That's final now. We can't challenge that. The example I want to give you that may clarify your question, Judge Steyer, because this is a real-world example. Earlier this year the FCC had an auction. They sold 700 megahertz licenses, and at the end of the day the licenses had almost all been bought by big companies. Everybody had complied with the terms of the auction. The big companies paid their money in, and there came a howl from Congress and from some of the public interest groups that, in fact, the auction had been not conducted properly because the intent of Congress was that small companies should get the licenses. Now, let's say that the FCC had decided at this point, after the auction was over, that, yeah, maybe we should have given these licenses to small companies instead of the big companies that actually won. Presumably they could have decided that. The D.C. Circuit could have said, yes, you've justified that as a regulatory decision. It violates the contract that you made with these people, but at least it passes muster as a regulatory decision. So what the D.C. Circuit decides does not necessarily control what I think the Court of Federal Claims has to decide. If you have a minute before you sit down, would you tell me what your contract is? The contract is the usual contract that's involved in any auction situation, which is the high bidder is obligated at the end of the auction when the gavel comes down, and this is what the FCC has itself said is involved in its own auctions. When the gavel comes down, the high bidder is obligated to pay the amount that it's bid, and the seller, the FCC, is obligated to give the high bidder what it was bidding on. But you weren't the high bidder. Well, I mean, our position is that we were the high bidder because under the terms of the auction,  Except that the District of Columbia said they weren't ineligible. What are we supposed to do with that? They didn't say that they weren't ineligible. All they said was that the FCC's determination that they weren't ineligible was valid, was lawful, was not unreasonable. But if we had gone directly to the Court of Federal Claims... Yeah, that's where I want to go with you. Let's assume you hadn't even appealed what the FCC did. You went directly from the FCC to the Court of Federal Claims. What would be your contract theory before the Court of Federal Claims? Exactly what I just told you, that the FCC laid out in its rules and in its public notices certain terms that apply to the auction of these licenses. My client complied with all the terms that the FCC set out and placed the highest bid among the qualified bidders under the terms of the auction. The other bidder, the bidder that the FCC gave the license to, in what I would consider breach of the contract, the public notice, if you looked at what we put in the brief, it's almost unbelievable. What do you think the Court of Federal Claims would have done with that? Well... Probably would have cited Fulden and then... Well, actually, if you look at the trial... Or they might have said you haven't exhausted your administrative remedies. They might have said that, but I think they would have been wrong because at that point we wouldn't have been trying to get a license anymore. We would have just been saying you breached the contract. What would your answer, if they had said Fulden seems to answer the case, what would your answer to the Court of Federal Claims judge have been? This is another way of saying what's your answer to Fulden now? Well, the trial court did say that Fulden... Right, in this setting, but that's not exactly the same setting. If you really put it this way, do you argue that Fulden is distinguishable or simply that it ought to be reconsidered? Well, the reason we suggested that this case should have gone to the court here on Bonk is really two things because I think at least it addresses a very important disconnect between this court and the Court of Federal Claims and the D.C. Circuit because the D.C. Circuit thinks that you can take these contract and takings claims to the Court of Federal Claims and the Court of Federal Claims thinks it can't. Okay, but make sure you answer the part of the question as to whether you're distinguishing it. Yes, so that was my preference and I think it still is what I would hope the court would do, but if this panel decided not to do that, the fact of the matter is that the Fulden case did not involve a contract. The trial judge, the trial court in Fulden found that there was no contract. The appellate court here did not disturb that finding and in fact analyzed the whole situation on the basis that even though it had been characterized as a contract by the plaintiffs, it was at root a complaint about the administrative proceedings of the FCC and it was on that basis that both the trial court and this court, the Fulden panel, decided the case. So you've changed your position because when you originally asked for in-bank, you said Fulden's indistinguishable. I think that's true. The language in the Fulden case was very, very broad and if you treated it as covering this case, that's correct, but the fact of the matter is if there had been a contract in the Fulden case, A, it might have been decided differently and B, the decisions of both the trial, well, certainly the appellate court would not have been dicta with respect to the broader jurisdiction of the Court of Federal Appointments. In terms of your contract theory, you're not arguing that the government had a duty, the FCC had a duty of fairness or conformance with its own regulations in dealing with the auction and that that was breached by their not requiring the certificate to be filed. You're not making that contract argument, are you? No. I mean, that's the way the trial judge here would have reformulated the case, but I don't think that is the case. What we are arguing is that we actually had a contract with the FCC and it was simply breached. Okay. Why don't we hear from the government and we'll reserve a couple of minutes for you.  Mr. Behar. Thank you, Your Honor. May it please the Court. This Court should affirm the decision of the trial court dismissing Biltmore's complaint because the trial court correctly held that it was bound by Folden in this matter and that despite the fact that Biltmore has characterized its lawsuit as a breach of contract action, in fact, what it's challenging is the FCC's ultimate decision to award. Do you think, let me see if I understand what your position is in Gross before you get into the details. Sure. Do you think that there's any contract claim that survives the D.C. Circuit's judicial review of the FCC's action in any of these kinds of cases? That is, if someone is complaining that the license should have been granted to them and it was not granted to them because of a violation of the rules applicable to the auction, is there only remedy to go to the D.C. Circuit in a 402B judicial review proceeding and no damages remedy at all? Are you saying that the damages remedy is separate, it belongs in the D.C. Circuit and somewhere between the District Court and the Court of Appeals, or are you saying that any damages recovery has to wait until after the D.C. Circuit rules and if they rule that in fact, well, however they rule, that there remains some opportunity for a recovery but not here? The government's position, Your Honor, is that with regards to a challenge in the hypothetical you presented, there is no remedy for damages because the auction process does not create a contract between the FCC and each bidder on that auction. And is that because Congress has created a whole administrative mechanism that effectively avoids any claim of implied contract right that would normally arise in a common law auction type situation? Is that your contention? In part, Your Honor, I think part of the response to this is that the whole licensing scheme itself as set forth by Congress in these varying regulations and statutes is not a commercial transaction that creates a contract between even the FCC and the winning bidder at auction. But you keep arguing that it does create a contract. When they don't pay, you sue. And next wave, you admitted there's a contract. And there are lots of cases that suggest that if you're the winning bidder at an auction, you have a contract. And suppose somebody says, I'm the winning bidder. I should have gotten the thing. There's no other party involved. And they go to the D.C. Circuit. The D.C. Circuit says, You're right. FCC, give them the license. And then they say, Well, we've gotten the license two years later than we should have. We're entitled to breach damages during the interim. I'm not saying whether those should recover or not recover. But don't they have the right to come back to the Court of Federal Claims and say, Okay, now we've shown the FCC should have given us the license two years earlier. We want damages. Why doesn't the Court of Federal Claims have jurisdiction over that? Well, the FCC has taken the position that between the winning bidder at auction, there are what can be characterized as contractual obligations with regards to paying for that license. With regards to why the Court of Federal Claims would not have jurisdiction, Your Honor, the reason the Court of Federal Claims would not have jurisdiction is because the Communications Act specifically says that all challenges with regards to the FCC's licensing actions are to be presented to the D.C. Circuit. In my hypothetical, they did. And they presented it to the D.C. Circuit. The D.C. Circuit said, You're right. Give them the license. But the D.C. Circuit doesn't have authority to give them damages for the two-year delay, does it? No, it does not. Of course not. Nor, you say, does the Court of Federal Claims. That's our argument. And the reason for that is what? Is the Communications Act, 402B. Well, there's nothing expressed in the Communications Act that says, Oh, by the way, the Court of Federal Claims can't give damages for delay in award. No, there is not. And so where do you get it? Well, Enfold in this Court considered the legislative history behind the Communications Act, which pretty explicitly stated that all challenges with regards to FCC licensing actions are to be brought before the D.C. Circuit. Well, but at least arguably, set aside folded for a minute, there's at least arguably a difference between a challenge to the failure to award me a license as opposed to an attempt to recover damages caused by an erroneous failure to award me a license, right? That's correct, Your Honor. Right. Now, why is it that it's your position that the latter is covered by the preclusive force of Section 402F? I'm sorry, B. Simply because under the broad reading of the statute and the legislative history behind it, it basically says that everything arising out of these actions goes to the D.C. Circuit. Does that position compel you, however, to disagree with the assumption a minute ago that the D.C. Circuit doesn't have authority to grant damages in enforcement action under 402B? That is to say, it's clearly not a Tucker Act case, because Tucker Act is over in the Court of Federal Claims, but why doesn't your position force you into having to concede that if there are contract damages, if there is a contract, as you insist there is between the winning bidder and the government for some purposes, why can't the winning bidder turn around and say, okay, then I want damages, and I want the damages awarded through the District of Columbia Court of Appeals or District of Columbia? Well, in that hypothetical, Your Honor, I suppose it's possible that a winning bidder, under the hypothetical view of Judge Rolson had presented, might be able to bring a breach of contract claim with regards to that delay. In the District of Columbia? District Court? Court of Appeals? Where would it be? Yeah. It has to be in the D.C. Court of Appeals under your theory. That's correct. Under our theory and under the rubric set forth by Fulden, which states that there's no Tucker Act jurisdiction where Fulden's opinion lies. Fulden agrees with your theory? Correct. So under that theory, they've got to be in the D.C. Circuit? Hypothetically, they would have to be in the D.C. I'm not sure where else they would be able to bring those claims. Let's change the contract issue for just a minute, even though Mr. Evans didn't plead it. How about if they pled breach of contract being duty of honesty, directness, forthrightness, administrative procedure, and so on, that there was an obligation on the government to hold the auction in accordance with the terms that it held out. These people paid good money in terms of a deposit or whatever was required, and the government breached that duty of care. And is there a remedy for that breach? And if so, where? And just to clarify, we're talking about an unsuccessful bidder who's bringing this allegation? Yes, we're talking about Mr. Evans' client. I don't think there is a remedy in the Court of Federal Claims. I think in that hypothetical, what the unsuccessful bidder is doing is essentially recharacterizing a challenge to a regulatory action as a breach of contract simply in an attempt to get into a separate forum. There would be no reason, if they disagreed with the determination of the FCC as to whom the eligible bidder on the license was, they couldn't do exactly what Biltmore did in this case, which was bring that claim to the D.C. Circuit. They might bring it to the district court as a general contract claim, administrative law violation. Didn't deal fairly. I'm sorry? They didn't deal fairly. Correct, Your Honor. I think in that case, though, we would still be looking at 402B, which would preclude a claim in the district court. And I think your hypotheticals sort of point to the fiction that serves as the basis of Biltmore's claims here, which is they weren't the successful bidder for this license, and the only way we can accept that they have a contract is if we allow the Court of Federal Claims to basically go back and reconsider the FCC's original determination. But they would be the successful bidder if the D.C. Circuit had said they were the successful bidder, and then there'd be a contract, wouldn't there? Had the D.C. Circuit said they had been the successful bidder? Yeah, they should have been given the license, because the other bidder was disqualified and they were the next highest bidder and they should have gotten the license. So then they'd have a contract, right? Well, again, the government's position is there is a contractual obligation with regards to payment for the license, and the FCC will award the license at that point. The license itself is not a contract with the FCC. No, of course not, but it's a contract about the license. With regards to the obligations of the granting of the license. Then your obligation is their obligation, so there's a contract, right? Yeah, they agree to pay, you agree to give them the license, the D.C. Circuit says there was a contract. Under that hypothesis, had the D.C. Circuit made that finding? Your argument could be, well, it's a contract for some purposes, but not for all purposes. If they don't pay, where do you go to get your money? If the winning bidder does not pay? Well, I believe the answer is… Do you go to a district court? And if so, under what jurisdiction? Is this a 402A enforcement action of a sort? I believe 402A, A and B sort of cover the entire license scheme. Right, and we've been focused on B, but A is, I take it, generally enforcement, and I'm just curious whether this would constitute the enforcement of an order? I mean, if they were granted the license, or would you view it as really a common law contract sort of claim? I think it would be more akin to the enforcement of an order. I mean, the FCC, first of all… Well, that's not the way you've presented it in these cases, is it? You've presented it as a garden variety breach of contract. They agreed to pay for the license, they didn't, you owe us money. Isn't that the way you presented these cases? I believe, actually, yes. And you go into where? District court? I believe it is district court. But again, this goes to the idea that there's a winning bidder on a contract to, on an auction, I apologize, and the obligations that are created between that winning bidder and the FCC. Again, here, what we have is an unsuccessful bidder who has sort of conjured up an implied in fact contract. Well, it brings us to the, just to cut to the chase where I think you're going and tell me if you're not, it brings us to the problem of what do we do about the fact that the D.C. Circuit has addressed the claim, albeit in an APA review setting, with an APA review standards,  but as a qualifying bidder. Do you think that that finding is collateral estoppel to any assertion of contract right in this case? Right? Assuming this court believes the court would have jurisdiction, yes, it would be collateral estoppel. And the question is then, in response to Mr. Evans' argument, that while it's under a different standard, it's one thing to say that something is not arbitrary and capricious or unreasonable, it's another thing to say that there simply isn't a contract right, period, to that. Something that doesn't have the kind of deference to the agency's action. Why is that not enough to defeat the collateral estoppel claim? I'm sorry, can you... Well, in other words, his argument is essentially this, if I understand it correctly, which is to say the D.C. Circuit was not holding that the agency was correct in an absolute sense. All it was holding was that what they did was not unreasonable, it was not arbitrary and capricious. That's a much lower standard than saying, as you would have to say in a contract setting, what they did is correct and lawful. Preponderance, let's say. Understood. Well, again, I think this goes back to the first question, which is, is there a contract when you are an unsuccessful bidder at auction and the government... But again, let's assume that we get over that and then go straight to the question of collateral estoppel. Why is the determination of the D.C. Circuit collateral estoppel against Biltmore in this action, assuming there's a contract? Assuming there's a contract, Biltmore is collaterally stopped because the underlying issue, although presumably it would be considered under a different standard, has already been decided, and that's whether or not Liberty was eligible. What we would essentially be doing is opening the door to very inconsistent determinations with regards to the same issue. That's true, but you do understand the argument about the different standards having an effect on collateral estoppel. I mean, O.J. Simpson, to take the most extreme case, found out to his dismay that getting acquitted in the criminal case did not create a collateral estoppel on his behalf, setting aside the fact that there are different parties involved, but it does not create a collateral estoppel in a civil case because of the different standards. Same thing, the argument is, here, because you have a more rigorous standard and therefore the agency might be right that what they did was not unreasonable in the V.C. circuit, but they may be wrong in trying to show that there's a contract right, or that there's no contract right. Correct, and I guess how the trial court dealt with this was to say, assuming there is jurisdiction and we can consider this, it's not a contract they have. Essentially what they've done is brought a garden variety bid protest, and in examining what the agency did, there is no different standard of review. In fact, it's exactly the same. For bid protest. Correct. Thank you very much. Thank you. Mr. Evans, we'll give you a couple of minutes. Thank you. I'm glad to see that the government is now, I think, conceding that the auction arrangement between the FCC and the bidders does constitute a contract, and when the FCC says it's going to hunt you down to the ends of the earth to be sure you pay your high bid, that that obligation runs the other way, too, that they've got to give the license to the person that makes the high bid. I just want to take issue with two things that came up in the course of the government's discussion. First of all, they seem to be taking a very broad view of the jurisdiction granted to the D.C. circuit under 402B, saying that it's exclusive, and that's the way I interpreted the Fulden panel's reading of 402B, but we know that that reading can't possibly be correct because, first of all, the D.C. circuit says that the Tucker Act remedy is presumed available unless Congress has specifically taken away that remedy by a particular enactment, and they have not done that with respect to the Communications Act. So at least the D.C. circuit thinks that the Court of Federal Claims does have jurisdiction over some matters that could come up that are also within the D.C. circuit's jurisdiction. Secondly, the Next Wave case teaches us that there are bankruptcy implications to an FCC licensing matter, but at least the Bankruptcy Court has jurisdiction over that. If you remember Next Wave, the Second Circuit Court of Appeals had said, no, the Bankruptcy Court has no jurisdiction because 402B gives exclusive jurisdiction to the D.C. circuit. The D.C. circuit said, no, that's not true. The Bankruptcy Court does have jurisdiction, and the Supreme Court upheld the D.C. circuit. So clearly there's a pretty big chink in the exclusive jurisdiction armor of the D.C. circuit, and there's no reason not to say that in the case of a contract situation like this, the Court of Claims could also have jurisdiction. The other thing I want to point out is I think the paradigm that we really need to be looking at here is